[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14537
Non-Argument Calendar

_____

D. C. Docket No. 04-61474-CV-KMM

JONATHAN HUGHES,

　　　　　　　　　　　　　　　　　　　　Plaintiff-Appellant,

versus

COCONUT CREEK POLICE DEPARTMENT,
et al.,

　　　　　　　　　　　　　　　　　　　　Defendants,

MICHAEL LEONARD,
RODNEY SKIRVIN,
THOMAS SYE,

　　　　　　　　　　　　　　　　　　　　Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 23, 2007)**

Before ANDERSON, BIRCH and PRYOR, Circuit Judges.

PER CURIAM:

Jonathan Hughes, a Florida state prisoner, appeals pro se the district court's grant of summary judgment in favor of the defendants, Officers Michael Leonard, Rodney Skirvin, and Thomas Sye, all of the Coconut Creek Police Department ("CCPD"), in his civil rights action filed pursuant to 42 U.S.C. § 1983.[1] In his complaint, Hughes alleged that Officers Leonard, Skirvin, and Sye violated his Fourth Amendment rights by (1) entering Hughes's bedroom without a warrant; and (2) having his car towed to the police station without a warrant and subsequently searching it after it was impounded. The defendants asserted the defense of qualified immunity. Each claim is analyzed below.

We review de novo a district court's grant of summary judgment. Mercado v. City of Orlando, 407 F.3d 1152, 1156 (11th Cir. 2005). In conducting a de novo review of the district court's disposition of a summary judgment motion based on qualified immunity, we (1) resolve all issues of material fact in favor of the plaintiff; and (2) answer the legal question of whether the defendant is entitled to qualified immunity under that version of the facts. Lee v. Ferraro, 284 F.3d 1188,

[1]The district court dismissed Hughes's complaint against the CCPD and Driscoll Towing and Hughes does not appeal that decision. Therefore, Hughes has abandoned any claims with respect to the CCPD and Driscoll Towing.

1190 (11th Cir. 2002).

In order to state a claim for relief under § 1983, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). Each defendant named in Hughes's complaint was a CCPD police officer at the time of the alleged Fourth Amendment violations; thus, the focus is on whether or not the officers' actions in seizing Hughes's car and searching his bedroom without a warrant violated the Constitution and whether the officers are immune from suit for their actions.

Qualified immunity protects government officials performing discretionary functions from civil liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Hughes concedes that the officers were performing their discretionary functions at the time his constitutional rights were allegedly violated. "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).

In order to evaluate whether qualified immunity is appropriate, we must

3

engage in a two-step analysis. We must first address the threshold question of whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id. If, on the other hand, "a constitutional right would have been violated under the plaintiff's version of the facts," we must then determine whether the right was clearly established. Vinyard, 311 F.3d at 1346.

## A. Warrantless Search of Hughes's Bedroom

On appeal, Hughes argues that his father did not have the authority to consent to Officer Leonard's search of Hughes's bedroom because Hughes (1) was 24 years old; (2) paid rent; (3) cooked his own food; and (4) told his father not to allow anyone into the bedroom. Hughes asserts that the officers should have asked more questions to determine whether Hughes had a reasonable expectation of privacy in his bedroom.

"The Fourth Amendment[2] generally prohibits the warrantless entry of a

---

[2]The Fourth Amendment provides that: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be

4

person's home, whether to make an arrest or to search for specific objects."

Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148

(1990). This prohibition does not apply, however, if the individual whose property

is searched voluntarily consents. Id. In addition, third parties may consent to

searches when they possess "common authority over or other sufficient

relationship to the premises or effects sought to be inspected." United States v.

Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). The

Supreme Court has explained that:

> The authority which justifies the third-party consent does not rest
> upon the law of property. . . but rests rather on mutual use of the
> property by persons generally having joint access or control for most
> purposes, so that it is reasonable to recognize that any of the
> co-inhabitants has the right to permit the inspection in his own right
> and that the others have assumed the risk that one of their number
> might permit the common area to be searched.

Id. at 172 n.7, 94 S.Ct. at 993 n.7 (internal quotations and citations omitted). We

have applied this third-party consent rule broadly. See United States v.

Watchmaker, 761 F.2d 1459, 1473 (11th Cir. 1985) (noting that we have applied

the third-party consent rule broadly and citing to United States v. Woods, 560 F.2d

660, 666 (5th Cir. 1977), which held that a co-habitant who was not known to be

the co-owner of the house had the authority to consent to the search).

violated . . . ." U.S. Const. amend. IV.

5

Nonetheless, "even if the consenting party does not, in fact, have the requisite relationship to the premises, there is no Fourth Amendment violation if an officer has an objectively reasonable, though mistaken, good-faith belief that he has obtained valid consent to search the area." United States v. Brazel, 102 F.3d 1120, 1148 (11th Cir. 1997).

In the instant case, Hughes does not dispute that his father voluntarily consented to the search; rather, Hughes argues that his father did not have the authority to consent. Assuming, arguendo, that Hughes's father did not have the authority to consent, there was no Fourth Amendment violation because Officer Leonard had an objectively reasonable, good-faith belief that he had obtained valid consent to search the bedroom. See Brazel, 102 F.3d at 1148. Hughes's father informed Officer Leonard that he owned the trailer. Hughes's father also gave Officer Leonard permission to "search [Hughes's bedroom] and take whatever items he need[ed]." Moreover, there is no evidence that the bedroom door was locked when Officer Leonard arrived. Further, Hughes's father did not tell Officer Leonard that: (1) Hughes had a key to the bedroom; (2) Hughes paid rent; and (3) Hughes told his father not to allow anyone into the bedroom. Therefore, Officer Leonard had no reason to believe that Hughes's father did not have shared authority over Hughes's bedroom. Accordingly, the officers did not violate

6

Hughes's Fourth Amendment rights with respect to the search of his bedroom, and, therefore, we need not consider the second prong of the qualified immunity analysis. Saucier, 533 U.S. at 201, 121 S.Ct. at 2156.

**B. Warrantless Seizure of Hughes's White Mazda**

On appeal, Hughes argues that the officers did not establish probable cause or exigent circumstances for the warrantless seizure of his vehicle. Hughes contends that, on March 21, 2003, the victim never mentioned that Hughes attacked her in a white Mazda. Accordingly, Hughes maintains that Officer Leonard did not have probable cause to look in the white Mazda. Moreover, Hughes argues that Leonard admitted that he went to Hughes's trailer park to search for a red Mazda, and Hughes never told the officers that the white Mazda might be towed away. Finally, Hughes maintains that because the seizure of the white Mazda was illegal, the subsequent search of the car at the police station was also illegal.

In most circumstances, unless there is consent, police officers must obtain a warrant supported by probable cause to justify a search under the Fourth Amendment. United States v. Magluta, 418 F.3d 1166, 1182 (11th Cir. 2005), cert. denied, 126 S.Ct. 2966 (2006). "A warrantless search is allowed, however, where both probable cause and exigent circumstances exist." United States v. Tobin, 923

7

F.2d 1506, 1510 (11th Cir. 1991). "Probable cause exists when under the totality-of-the-circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. (internal quotations and citation omitted). "In other words, probable cause exists where facts lead a reasonably cautious person to believe that the search will uncover evidence of a crime." Id. (internal quotations and citation omitted).

An exigent situation may arise when there is a danger that the evidence will be destroyed or removed. Id. "The test of whether exigent circumstances exist is an objective one." Id. "The appropriate inquiry is whether the facts . . . would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." Id. (internal quotations and alteration omitted). "[T]he presence or absence of exigent circumstances must be examined as the circumstances arise." United States v. Rodgers, 924 F.2d 219, 223 (11th Cir. 1991).

Officer Leonard had probable cause to look in the white Mazda because he knew that (1) the sexual assault had not occurred in the red Mazda, as the red Mazda belonged to a neighbor and was completely unrelated to Hughes; (2) the victim stated that she had been sexually assaulted in Hughes's vehicle; (3) the white Mazda was parked by Hughes's trailer, and, presumably, it belonged to

8

either Hughes or his father; and (4) under a totality of the circumstances, a reasonable person would have concluded that Hughes was lying about the color of the car to impede the investigation. See Tobin, 923 F.2d at 1510.

Moreover, exigent circumstances justified the warrantless towing of the white Mazda. A reasonable, experienced law enforcement offer would have believed that exigent circumstances existed because (1) Hughes stated that his friend had a key to the car, and thus the friend could have removed the victim's bra before a search warrant was obtained; and (2) Hughes told Officers Leonard and Skirvin that his friend was going to move the car that day, or the trailer park management was going to have it towed, which meant that someone could tamper with any physical evidence of the sexual assault. See Tobin, 923 F.2d at 1510. The fact that Hughes told the police that the red Mazda, as opposed to the white Mazda, was going to be towed is not determinative because, as discussed above, Officer Leonard had reason to believe that Hughes was lying about the color of the Mazda. Based on Hughes's statements, however, Leonard still had reason to believe that Hughes's friend had a key to the car. The exigency of the circumstances must be examined as the circumstances arise, and, once Leonard saw the bra in plain view, he had reason to believe that Hughes's friend might remove the bra or tow the car before he could get a warrant. See Rodgers, 924

F.2d at 223.

Accordingly, because the officers had probable cause to conduct a warrantless search of Hughes's vehicle based on the "exigent circumstances" exception, the officers did not violate Hughes's Fourth Amendment rights by conducting a search after the vehicle was impounded.[3] See United States v. Birdsong, 982 F.2d 481, 483 (11th Cir. 1993) (noting that "once law enforcement officers have probable cause to conduct a warrantless search of a vehicle, the officers may conduct the warrantless search even after the vehicle is impounded and in police custody"). In sum, taken in the light most favorable to Hughes, the uncontested facts do not show that the officer's conduct violated Hughes's constitutional rights. Saucier, 533 U.S. at 201, 121 S.Ct. at 2156.

Accordingly, upon review of the record on appeal and consideration of the parties' briefs, we discern no reversible error, and we affirm the district court's grant of the defendants' motion for summary judgment.

**AFFIRMED.**

---

[3]Although the officers argue that the "automobile exception" to the warrant requirement also applies, we need not consider that exception because exigent circumstances justified the warrantless seizure of Hughes's vehicle.