Janet FELICIANO, Plaintiff,

v.

CITY OF MIAMI BEACH,
et al., Defendants.

Case No. 10–23139–CV.

United States District Court,
S.D. Florida.

March 8, 2012.

Robert William Ross, Jr., Jennifer Lucas Keesler, Cape Coral, FL, for Plaintiff.

Robert F. Rosenwald, Jr., City Of Miami Beach, Joshua Michael Entin, Rosen Swit-

kes & Entin P.L., Miami Beach, FL, for Defendants.

## OMNIBUS ORDER GRANTING DEFENDANT CITY OF MIAMI BEACH'S MOTION FOR SUMMARY JUDGMENT (D.E. 117) AND DENYING AS MOOT DEFENDANT CITY OF MIAMI BEACH'S MOTION TO DISMISS (D.E. 68)

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendant City of Miami Beach's Motion for Summary Judgment (D.E. 117), filed November 15, 2012. Plaintiff filed her Response (D.E. 130) on November 29, 2011. The City filed its Reply (D.E. 140) on December 12, 2012. Also before the Court is the City's Motion to Dismiss (D.E. 68), filed June 6, 2011. Plaintiff responded to that motion (D.E. 75) on June 30, 2011, and the City replied (D.E. 81) on July 22, 2011.

Having considered the Motion for Summary Judgment, Response, Reply, related pleadings, and the record, the Court finds as follows.

## I. Background

### a. Underlying Incident

The record evidence, viewed in a light most favorable to the non-moving party, reveals as follows.

In August 2006, Miami Beach Police received a confidential tip from Plaintiff's neighbor that drug activity was taking place in Plaintiff's home. (Defendant Officers' Statement of Facts, D.E. 113 at ¶ 1.) The tip indicated that the residents at Plaintiff's address were possibly drug dealers. (*Id.*) The tip also indicated that the residents had three small children. (*Id.*)

On September 2, 2006, at approximately 9 p.m., Miami Beach Police Department Officers Andrew Dohler, Douglas Dozier, Robert Acosta, and James Nash went to Plaintiff's residence to investigate the complaint. (*Id.* at ¶ 4.) They were in plain clothes. (Plaintiff's Statement of Material Facts, D.E. 131 at ¶ 1.) The officers came to the Plaintiff's door and allegedly smelled a strong odor of marijuana emanating from the apartment. (Defendant Officers' Statement of Facts, D.E. 113 at ¶ 5.) Acosta knocked on Plaintiff's door. (*Id.*)

Plaintiff was at home with boyfriend Edgardo Gonzaga and their three children. (*Id.* at ¶ 7; Plaintiff's Statement of Material Facts, D.E. 131 at ¶ 5.) Plaintiff was five to eight weeks pregnant. (Defendant Officers' Statement of Facts, D.E. 113 at ¶ 13C; Plaintiff's Counter–Statement of Facts, D.E. 131 at ¶ 13C.) Gonzaga was in the bedroom watching television. (Plaintiff's Statement of Material Facts, D.E. 131 at ¶ 5.)

Plaintiff's eldest child opened the door. (*Id.* at ¶ 2.) Plaintiff came to the doorway and saw the officers outside. (*Id.*) The officers told Plaintiff that they received a tip that drugs were being sold from the home. (*Id.*) Dohler asked to enter the home and conduct a search. (*Id.* at ¶ 3.) Plaintiff refused any entry without a warrant. (*Id.*) Dohler told Plaintiff that that they did not need a warrant because there was a candle burning in her window. (*Id.* at ¶ 4.) Dohler said that the burning candle was a fire hazard justifying removal of the children from the home. (*Id.*)

Soon Gonzaga came out of the bedroom and into the living room. (*Id.* at ¶ 5.) The officers claim that they saw a marijuana joint in Gonzaga's hand. (Defendant Officers' Statement of Facts, D.E. 113 at ¶ 9.) At this point the officers allegedly rushed through the door and into Plaintiff's apartment. (Plaintiff's Statement of Facts, D.E. 131 at ¶ 5.)

Acosta grabbed Plaintiff by the neck and forced her towards the couch. (*Id.* at ¶ 6.)

He then restrained her by holding her arms and began repeatedly pushing her abdomen into the wooden couch arm. (*Id.*) Plaintiff begged Acosta to stop hurting her because she was pregnant. (*Id.*) Plaintiff also told Officer Acosta that she was asthmatic. (*Id.*) Acosta laughed but said nothing. (*Id.*) Nash stood next to Plaintiff and Acosta and did not intervene. (*Id.* at ¶ 7.)

Dozier and Dohler grabbed Gonzaga by the neck. (*Id.* at ¶ 8.) Plaintiff's eldest child ran to help Gonzaga. (*Id.*) Nash grabbed the child by the shoulder and threw him against the wall. (*Id.*) Gonzaga struggled, attempting to get away from the officers and go help his son. (*Id.*) Dohler and Dozier handcuffed Gonzaga and placed him under arrest. (*Id.*) During a search of Gonzaga's person incident to arrest, Officers discovered a small amount of cannabis as well as rolling paper. (Defendant Officers' Statement of Facts, D.E. 113 at ¶ 15.)

Acosta released Plaintiff to sit on the couch with her children. (*Id.* at ¶ 9); (Defendant Officers' Statement of Facts, D.E. 113 at ¶ 16.)

Acosta, Dohler, and Dozier proceeded to search Plaintiff's bedroom and kitchen. (*Id.* at ¶ 10.) The officers went through Plaintiff's underwear drawer and pantry. (*Id.*) Neither Plaintiff nor Gonzaga provided consent to the search. (*Id.*)

One officer emerged from the kitchen and said that he had found a marijuana joint. (*Id.* at ¶ 11.)

The officers arrested Gonzaga for possession of marijuana, possession of drug paraphernalia, and resisting arrest. (*Id.* at ¶ 12.) All charges were later dropped. (*Id.*) The seized contraband was never tested and ultimately was destroyed. (Acosta Deposition, D.E. 114–4 at 84–85.)

The entire episode lasted ten to fifteen minutes. (Plaintiff's Statement of Facts, D.E. 131 at ¶ 13.)

Plaintiff experienced cramping and bleeding after the officers left. (*Id.* at ¶ 14.) The next night, Plaintiff went to the emergency room and learned that she had suffered a miscarriage. (*Id.*)

Plaintiff maintains that there were no drugs anywhere in or near her residence on September 2, 2006. (Plaintiff's Counter–Statement of Facts, D.E. 131 at ¶¶ 5, 15.) She also claims that Gonzaga had no drugs in his hand when he came out of the bedroom and that no joint was ever recovered by police. (*Id.* at ¶¶ 9, 11, 16.)

### b. Visit to Internal Affairs

Plaintiff, Gonzaga, and Plaintiff's father went to the Miami Beach Department Internal Affairs Department on September 5, 2006, to report the incident. (Plaintiff's Counter–Statement of Facts, D.E. 132 at ¶ 24.) Plaintiff gave a preliminary statement to one investigator and a tape-recorded statement to another. (Plaintiff's Statement of Facts, D.E. 132 at ¶ 7.)

At some point Plaintiff felt she was being questioned accusatorily, so she left. (Plaintiff's Statement of Facts, D.E. 132 at ¶ 8.) She provided her contact information but received no follow-up communication from the department. (*Id.* at ¶ 10.)

### c. MBPD Policies, Trainings, and Unrelated Complaints

The Miami Beach Police Department has promulgated standard operating procedures ("SOPs") that govern police conduct. (City of Miami Beach's Statement of Undisputed Facts, D.E. 118 at ¶ 1.) The SOPs are based on standards developed and promulgated by The Commission on Accreditation for Law Enforcement Agencies and The Commission for Florida Law Enforcement Accreditation. (*Id.*)

The "use-of-force" SOP sets forth the following factors for consideration in use-of-force situations: seriousness of crime; size, age and weight of subject; apparent physical ability of subject; presence of

weapons; known history of violence; medical condition, mental state and influence of drugs or alcohol; and number of subjects present. (*See* Plaintiff's Response in Opposition to Summary Judgment, D.E. 130 at 7 n. 9.)

Both Plaintiff's expert and the City's expert agree that the use-of-force SOP and other related SOPs adequately protect all members of the public, including so-called "special needs" groups like pregnant women, children, the elderly, asthmatics, and the physically disabled. (City of Miami Beach's Statement of Undisputed Facts, D.E. 118 at ¶ 3.)

The Miami Beach Police Department conducted mandatory training courses between 2003 and 2006. (*Id.* at ¶ 2.). Among the mandatory courses were those pertaining to the protection of the elderly, young, and disabled. (*Id.*) The department also conducts mandatory annual re-trainings for all officers. (*Id.*) However, Officers Acosta and Nash have no recollection of receiving training specific to restraint of special populations within the last eight years. (Plaintiff's Counter-Statement of Facts, D.E. 132 at ¶ 2.).

The Miami Beach Police Department has an Internal Affairs unit, housed separately from the police department, which conducts investigations into complaints of police misconduct. (*See id.* at ¶¶ 5-11, 24.) All Internal Affairs investigators are supervisory in rank and attend Internal Affairs school. (*Id.* at ¶ 7.) Plaintiff's expert opines that Internal Affairs has a practice of inadequately investigating and disciplining officer misconduct. (*See id.* at ¶ 8.) Plaintiff's expert bases his opinion on three prior and unrelated complaints filed with the police department Internal Affairs unit between 2003 and 2006.(*Id.*) In one incident, the complainant alleged that an MBPD officer pulled her by the hand during a traffic stop and altercation. (*Id.* at ¶ 15.) Internal Affairs interviewed six witnesses and found no inappropriate use of force, though it did find that the officer was discourteous and disciplined him with verbal counseling. (*Id.*) In the second incident, two officers were alleged to have used excessive force with an arrestee. (Defendant's Motion for Summary Judgment, D.E. 117 at 10.) Internal Affairs interviewed eighteen witnesses, convened a panel of subject-matter experts, and identified seven possible violations. (City of Miami Beach's Statement of Undisputed Facts, D.E. 118 at ¶ 17.) Many of the charges were found substantiated, and one of the accused officers was suspended for two weeks without pay following the investigation. (*Id.* at ¶ 19.) And in the third incident, an officer used a taser to subdue a resisting subject. (*Id.* at ¶ 20.) Internal Affairs interviewed seventeen witnesses and concluded that the force used was not inappropriate. (*Id.* at ¶ 21.)

**d. Plaintiff's Present Action**

Plaintiff filed a fifteen-count second amended complaint against the Defendant officers and the City of Miami Beach. The allegations against the City are as follows:

| Count | Basis of Claim | Title of Allegation |
| --- | --- | --- |
| 1 | 42 U.S.C. § 1983/4th Amendment | Official Policies Resulting in Excessive Force |
| 2 | 42 U.S.C. § 1983/4th Amendment | Official Policy—Failure to Train |
| 3 | 42 U.S.C. § 1983/14th Amendment | Official Policy–Failure to Train |
| 4 | 42 U.S.C. § 1983/4th and 14th Amendments | Custom or Practice–Failure to Investigate and Discipline Misconduct |
| 5 | 42 U.S.C. § 1983/4th Amendment | Custom–Ratification of Unlawful Searches and Seizures |

| 14 | Florida State Law | Negligent Infliction of Emotional Distress |
|---|---|---|
| 15 | Florida State Law | Invasion of Privacy—Intrustion |

(*See* Second Amended Complaint, D.E. 48.)

### e. Motion for Summary Judgment

The City moves for summary judgment. The City argues that Plaintiff cannot establish municipal liability for her Section 1983 claims. The City further argues that Plaintiff's state-law tort claims are noncognizable or unsustainable.

### II. Summary Judgment Standard

Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct.

2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### III. Counts 1–5—Section 1983 Claims

#### a. Section 1983

Counts 1 through 5 of Plaintiff's complaint are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

■ Section 1983 provides civil remedies for deprivations of federal rights established elsewhere. *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). To state a cause of action under Section 1983, the plaintiff must allege that some person has deprived him of a federal right, and that the person who has deprived him of that right acted under color of state or territorial law. *See Monroe v. Pape,* 365 U.S. 167, 171, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

### b. Municipal Liability

■ A municipality can be a "person" subject to liability under Section 1983, but not under a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

"Instead, it is when execution of a Government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. 2018.

To prove Section 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law. *St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). In other words, a longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir.1991).

### a. Counts 1, 2, and 4—Inadequate Policies, Training, and Discipline Resulting in Excessive Use of Force

In Counts 1, 2, and 4 of her Second Amended Complaint, Plaintiff alleges that insufficient policy guidelines, inadequate training of police officers, and inadequate discipline of police misconduct resulted in her being subjected to an excessive use of force.

In *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court made clear that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city

'policy or custom' that is actionable under § 1983." *Id.* at 389, 109 S.Ct. 1197.

For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights. It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are "deliberately indifferent" to the need.

*Id.* at 390 n. 10, 109 S.Ct. 1197 (citation omitted).

■ To establish a "deliberate or conscious choice" or such "deliberate indifference," a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir.1998).

While the *Harris* "deliberate indifference" standard is stated with specific reference to inadequate training, this Circuit has applied the same standard to claims of insufficient policy promulgation and inadequate discipline as well. *See Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1212 (11th Cir.1993).

■ Here the Court finds insufficient evidence that the City was deliberately indifferent to Fourth Amendment excessive-force protections so as to sustain Plaintiff's claims of municipal liability on Counts 1, 2, or 4. First, the record reveals

that the Miami Beach Police Department has promulgated standard operating procedures on the use of force. Those procedures instruct officers to consider, among other things, subjects' size, age, weight, physical ability, and medical condition when using force. Experts on both sides agree that the standard operating procedures adequately address all members of the public including individuals with "special needs" such as pregnant women. And despite Officer Acosta and Nash's inability to remember any training on the restraint of special needs individuals, the department evidently conducts mandatory and annual trainings on protection of the elderly, young, and disabled. The Court thus finds that even if restraint of pregnant women was a facially "obvious" area requiring attention under *Harris*, the police department addresses restraint of pregnant women with its existing policy guidelines and trainings. Plaintiff has also made no showing that the Miami Beach police so often violate excessive-force constitutional rights that the need for greater standards or training must have plainly obvious to the City. In particular, Plaintiff cites no prior instances in which Miami Beach police used excessive force against any special needs groups. Plaintiff apparently relies on three unrelated Internal Affairs cases to show a practice of inadequate investigation and discipline of excessive-force complaints. In the first, the complainant alleged that an MBPD officer pulled her by the hand during a traffic stop and altercation. Internal Affairs interviewed six witnesses and found no inappropriate use of force, though it did find that the officer was discourteous and disciplined him with verbal counseling. In the second incident, two officers were alleged to have used excessive force with an arrestee. Internal Affairs interviewed eighteen witnesses, convened a panel of subject-matter experts, and identified seven possible violations. One of the accused officers

was suspended for two weeks without pay following the investigation. And in the third incident, an officer used a taser to subdue a resisting subject. Internal Affairs interviewed seventeen witnesses and concluded that the force used was not inappropriate. The Court finds these three isolated and dissimilar complaints—all of which were investigated, and at least two of which resulted in discipline—insufficient to show any widespread practice of failing to discipline unconstitutional uses of excessive force. *See also Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (no municipal liability in absence of factually similar complaints/incidents); *Gold v. City of Miami*, 151 F.3d 1346, 1353 (11th Cir.1998).

For all these reasons, the Court finds insufficient evidence of "deliberate indifference" subjecting the City to municipal liability under *Monell* and *Harris*. Accordingly, the City is entitled to summary judgment on Counts 1, 2, and 4.

### b. Count 3—Alleged Deprivation of Substantive Due Process

Plaintiff's Count 3 alleges that the City inadequately trained officers on the use of excessive force in violation of Plaintiff's Fourteenth Amendment substantive Due Process rights.

The Supreme Court has made clear that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

There is no dispute that the use of excessive force alleged in this case occurred in the course of an arrest, investigatory stop, or other seizure. Accordingly, under

*Graham,* any claim of deprivation of substantive Due Process is non-cognizable. The City is thus entitled to summary judgment on Count 3. *See, e.g., Tinney v. Shores,* 77 F.3d 378, 381 (11th Cir.1996).

#### c. Count 5—Failure to Investigate Subject Incident

The claim set forth in Count 5 is difficult to discern, but Plaintiff explains it as follows: "In Counts [sic] 5 of the Second Amended Complaint, Plaintiff advances *Monell* claims against CMB based on the ratification of the individual officers' unconstitutional conduct." (Plaintiff's Response in Opposition to Summary Judgment, D.E. 130 at 14.) From what the Court can gather, Plaintiff alleges that the police department's failure to investigate her particular incident constituted a policy subjecting the city to municipal liability. (*See id.* at 15.)

■ An inadequate investigation following the subject incident will not sustain a claim of municipal liability, because the after-the-fact inadequate investigation could not have been the legal cause of the plaintiff's injury. *See, e.g., Mettler v. Whitledge,* 165 F.3d 1197, 1205 (8th Cir. 1999) ("[A]n inadequate investigation into the January 22 shooting could not have caused Deputies Haltiner and Whitledge to use excessive force. Rather, Ms. Mettler would need to show that Ramsey County had failed to investigate previous incidents before a court could conclude the deputies at the time of the shooting believed a municipal custom allowed them to violate Shawn's rights with impunity."); *Bolander v. Taser Int'l, Inc.,* No. 07–cv–80789, 2009 WL 2004379, at *16 (S.D.Fla. July 9, 2009) ("Even if the City conducted no investigation after the incident, Plaintiffs could not show that the failure to investigate caused the use of excessive force. A different result would simply result in respondeat superior liability.").

In line with the foregoing, and assuming for purposes of argument that the Internal Affairs unit's investigation into Plaintiff's incident was somehow deficient, any deficiency could not have caused the constitutional violations alleged in this case. The Court therefore finds any alleged substandard investigation into the incident insufficient to establish a policy subjecting the City to municipal liability. The City is thus entitled to summary judgment on Count 5.

### IV. Counts 14 and 15—State–Law Tort Claims

The City further moves for summary judgment on Plaintiff state-law tort claims for negligent infliction of emotional distress and invasion of privacy.

#### a. Count 14—Negligent Infliction of Emotional Distress

■ In Florida, an employer is liable for the negligent acts of an employee occurring within the scope and course of employment. *See Fernandez v. Fla. Nat'l Coll., Inc.,* 925 So.2d 1096, 1100 (Fla.Dist. Ct.App.2006); *Burch v. Sun State Ford, Inc.,* 864 So.2d 466, 471 (Fla.Dist.Ct.App. 2004).

■ However, Florida law does not recognize a cause of action for the negligent use of force in making an arrest. *See City of Miami v. Ross,* 695 So.2d 486, 487 (Fla. Dist.Ct.App.1997) (concluding that "there is no such cause of action as 'negligent' use of excessive force"); *City of Miami v. Sanders,* 672 So.2d 46, 48 (Fla.Dist.Ct.App. 1996) ("[I]t is not possible to have a cause of action for 'negligent' use of excessive force because there is no such thing as the 'negligent' commission of an 'intentional' tort."). "[I]t is inapposite to allege the negligent commission of an intentional tort, such as the use of excessive force." *Lewis v. City of West Palm Beach, Fla.,* 561 F.3d 1288, 1294 (11th Cir.2009).

Here Plaintiff alleges negligent infliction of emotional distress in the context of a forcible detention. In line with the foregoing, the Court finds Plaintiff's claim of negligent infliction of emotional distress non-cognizable. Accordingly, the City is entitled to Summary Judgment on Count 14.

### b. Count 15—Invasion of Privacy

Plaintiff's Count 15 is a state-law claim for "invasion of privacy." Plaintiff alleges that the Defendant officers invaded her privacy "when they crossed the entry into Plaintiff's home without probable cause, warrant or exigent circumstances." (Second Amended Complaint, D.E. 48 at ¶ 162). Plaintiff alleges no invasion of privacy beyond the initial entry. (*See id.*)

The tort of invasion of privacy is ordinarily considered to encompass four categories, one of which consists of "intrusion upon the plaintiff's physical solitude or seclusion, as by invading his home...." *Guin v. City of Riviera Beach,* 388 So.2d 604, 606 (Fla.Ct.App.1980) (quoting W. Prosser, Torts § 117 at 807 (4th ed. 1971)). Florida has recognized the tort of invasion of privacy at least to this limited extent. *Id.*

 However, law enforcement personnel have a right, under appropriate circumstances, to enter upon private property. *Id.* "When the lawful performance of his duty requires that an officer enter upon private property to make a general inquiry, such an entry is justifiable." *State v. Garcia,* 374 So.2d 601, 603 (Fla.Ct. App.1979). And where officers lawfully enter private property, no cause of action for invasion of privacy can stand. *Guin,* 388 So.2d at 606.

Accordingly, the sustainability of Plaintiff's invasion-of-privacy claim hinges on the permissibility of the Defendant officers' entry.

 A warrantless search is permissible where both probable cause and exigent circumstances exist. *United States v. Tobin,* 923 F.2d 1506, 1510 (11th Cir.1991). The same holds true for in-home warrantless arrests. *See Parker v. Allen,* 565 F.3d 1258, 1290 (11th Cir.2009).

 Probable cause exists where the facts and circumstances within officers' knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

 It is well-settled that an uncorroborated, anonymous tip is by itself insufficient to establish probable cause. *See Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000); *Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). But "the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." *United States v. Lueck,* 678 F.2d 895, 903 (11th Cir.1982).

Here the initial tip alleging drug activity at the Plaintiff's residence was insufficient to supply probable cause justifying entry. The tip was anonymous and at least initially uncorroborated. So to develop probable cause, the Defendant officers required additional information or evidence.

The officers assert that when they arrived at Plaintiff's residence, they smelled the odor of marijuana emanating from the apartment. They also state that they saw Gonzaga holding a marijuana joint when he emerged from the bedroom and into their view.

Plaintiff, by way of her own deposition testimony, maintains that there was no marijuana in or around her home on the date in question. She also denies specifical-

ly that Gonzaga was holding a joint or that a joint was ever recovered by police.

Accordingly, a sub-issue is whether Plaintiff's deposition testimony is sufficient to demonstrate the absence of contraband and create a genuine issue of material fact on lack of probable cause.

Where the presence or odor of narcotics justifying an arrest is disputed, the Court on summary judgment "need not entertain conclusory and unsubstantiated allegations of fabrication of evidence." *Kingsland v. City of Miami*, 382 F.3d 1220, 1227 n. 8 (11th Cir.2004). In *Kingsland*, police officers arrested the plaintiff for driving under the influence of cannabis. *Id.* at 1225. The officers based the arrest primarily on their alleged detection of cannabis odor emanating from the plaintiff's breath, person, or vehicle. *Id.* at 1223–24, 1226. The plaintiff filed suit under Section 1983 for false arrest and denied engaging in any illegal drug activity on the day of the incident. *Id.* at 1225, 1226. The district court entered summary judgment for the defendants, finding in part that the plaintiff's denials failed to create an issue of fact on the existence of probable cause. *Id.* at 1227. The Court of Appeals reversed. *Id.* at 1223. The Court acknowledged that it "need not entertain conclusory and unsubstantiated allegations of fabrication of evidence" in assessing the existence of probable cause at the summary judgment stage. *Id.* at 1227 n. 8. However, the Court found that the plaintiff had produced additional, objective evidence disproving probable cause and sustaining a genuine issue of material fact:

> We find it significant that Kingsland is able to support her assertions of fabrication with the following facts: (1) despite supposedly detecting an odor of cannabis, the officers chose not to conduct a search of Kingsland's vehicle, her person, or her passengers to corroborate their testimony; (2) the officers did not call in drug-sniffing dogs to confirm their suspicions of drug use; (3) no drugs were ever found or produced; (4) Kingsland tested negative for cannabis; (5) Kingsland's vehicle was not impounded as evidence, nor was her allegedly odoriferous clothing retained; (6) the defendants stated in their arrest affidavit that Kingsland ran the red light, allegedly without taking statements from available witnesses or from Kingsland herself; and (7) the officers decided to charge Kingsland with DUI-cannabis rather than DUI-alcohol, and simultaneously destroy an initial arrest affidavit, only after she passed Breathalyzer tests. In sum, the defendants appear to lack any corroborating evidence to support their testimony that an odor of cannabis was present, whereas Kingsland is able to support her assertions with ample circumstantial evidence.

*Id.* at 1226–27. The Court concluded, "We cannot allow a probable cause determination to stand principally on the unsupported statements of interested officers, when those statements have been challenged and countered by objective evidence." *Id.* at 1228.

■ Here, by contrast, while Plaintiff claims that drugs were nowhere in or around her residence when the officers arrived, she cites only her own conclusory deposition testimony and no objective evidence to support her contention. The Court finds Plaintiff's bare assertions insufficient to create an issue of fact on whether the officers smelled or viewed marijuana. The Court will thus accept as uncontroverted the officers' assertions that they smelled marijuana emanating from Plaintiff's residence and that they saw Gonzaga holding a marijuana joint. *See, e.g., Burgest v. Colquitt Cnty.*, 177 Fed. Appx. 852, 854–55 (11th Cir.2005).

In light of the effectively undisputed evidence that the officers smelled marijuana at the residence and viewed Gonzaga holding a joint, the Court concludes that the officers harbored probable cause to support their entry of the home as well as their arrest of Gonzaga for possession of marijuana.

The next question is whether the officers' probable cause was complemented by exigent circumstances so as to permit the warrantless entry.

 Exigent circumstances exist when "the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action." *United States v. Burgos,* 720 F.2d 1520, 1526 (11th Cir. 1983). Recognized exigent circumstances include: "danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and 'hot pursuit' of a fleeing suspect." *United States v. Blasco,* 702 F.2d 1315, 1325 (11th Cir.1983).

 "[T]he need to invoke the exigent circumstances exception to the warrant requirement is particularly compelling in narcotics cases because narcotics can be so quickly destroyed." *Tobin,* 923 F.2d at 1510 (quotations omitted).

 The Court finds sufficient exigent circumstances justifying the officers' warrantless entry and arrest. The officers smelled and identified narcotics in Plaintiff's home. And significantly, both Plaintiff and Gonzaga were aware of the officers' presence. The exigency—namely, potential destruction of drug evidence—was sufficient to compel immediate entry of the premises and arrest of Gonzaga. *See, e.g., Tobin,* 923 F.2d at 1510–11; *United States v. Scroger,* 98 F.3d 1256, 1259–60 (10th Cir.1996); *see also Kentucky v. King,* —— U.S. ——, 131 S.Ct. 1849, 1858, 179 L.Ed.2d 865 (2011).

Having concluded that the officers possessed both probable cause and exigent circumstances justifying entry into Plaintiff's home, the Court finds Plaintiff's invasion-of-privacy claim unsustainable. The City is therefore entitled to summary judgment on Count 15.

## V. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant City of Miami Beach's Motion for Summary Judgment is **GRANTED.** Summary judgment is entered in favor of Defendant City of Miami Beach on Counts 1, 2, 3, 4, 5, 14, and 15 of Plaintiff's Second Amended Complaint.

Furthermore, as the Defendant City of Miami Beach's Motion for Summary Judgment is granted in its entirety, the Defendant City of Miami Beach's Motion to Dismiss (D.E. 68) is **DENIED AS MOOT.** *See, e.g., Abdullah v. City of Jacksonville,* 242 Fed.Appx. 661, 662 (11th Cir.2007).