[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15397
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cr-00011-CDL-MSH-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CHRISTOPHER OATES,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 16, 2015)

Before WILLIAM PRYOR, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Christopher Oates appeals his conviction for possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2), on the ground that the district court erred in denying his motion to suppress evidence found on a computer seized from his mother's home where he lived. After careful review, and for the reasons below, we affirm.

I.

Special Agent Jeffrey White, Department of Homeland Security Investigations, downloaded child pornography on the Ares peer-to-peer file sharing program ("Ares") from an IP address that was traced back to Exie Oates in an apartment in Columbus, Georgia. Agent White determined that, as an approximately 60 year old woman with no criminal history, Ms. Oates was an unlikely offender. Approximately six months later,[1] Agent White, along with another agent and two local police officers, traveled to Ms. Oates's apartment to conduct a "knock and talk."[2] When Agent White knocked on the door, an adult male, Mr. Oates, answered the door. The law enforcement agents and officers asked to speak with Ms. Oates, whom he identified as his mother. Law enforcement entered the apartment, although the parties disagree about the

---

[1] Agent White explained that the time lapse occurred because all three federal agents in his office were assigned to another investigation that lasted until February 2013.

[2] Agent White described a "knock and talk" as "when we go somewhere, either a residence or a business, and we knock on the door and we ask to speak to the occupants to conduct an interview." Pretrial Conference Tr. 15, Doc. No. 30.

circumstances under which they did so.  Once inside the apartment, which was occupied by Ms. Oates, Mr. Oates, and Mr. Oates's sister, Agent White observed a computer to the left of the front door that was actively running the Ares software. The officers asked Mr. Oates to step outside so that he would not have to discuss child pornography in front of his mother.  The government claims that in this conversation Mr. Oates admitted he had downloaded child pornography on the computer.  Mr. Oates agreed to go down to the police station to answer questions in private.  He was not taken into custody.  When law enforcement left the apartment to take Mr. Oates to the police station, they seized the computer.  Agent White later obtained a search warrant for the hard drive's contents.

Mr. Oates filed a motion to suppress the child pornography files retrieved from the computer, which he argued was seized illegally.  The district court denied the motion to suppress at a pretrial evidentiary hearing.  The court made a factual finding that the law enforcement agents "at some point [] stepped into the home and were not prohibited from doing so by Mr. Oates; and upon entering the home [] saw a computer which they had probable cause to believe had illegal contraband on it."  Pretrial Conference Tr. 57, Doc. No. 30.  The district court also found that "exigent circumstances existed for them to seize the computer" because "there was a legitimate concern that . . . evidence on the computer or the computer itself could be damaged or removed in some way" if left at the home.  *Id.*

3

A jury found Mr. Oates guilty as to count two of the indictment, and the district court sentenced him to 120 months' imprisonment, life on supervised release, and $100 in special assessments.  This appeal followed.

## II.

A district court's ruling on a motion to suppress involves mixed questions of fact and law.  *United States v. Smith*, 741 F.3d 1211, 1218 (11th Cir. 2013).  We review the district court's factual findings for clear error and its application of the law to the facts *de novo*.  *Id.* (internal citation omitted).  "[W]e will construe all facts in the light most favorable to the prevailing party," which here is the government.  *Id.*  "[W]e may affirm for any reason supported by the record, even if not relied upon by the district court."  *United States v. Chitwood*, 676 F.3d 971, 975 (11th Cir. 2012) (internal quotation marks omitted).

## III.

Mr. Oates contends that seizure of the computer violated his Fourth Amendment rights.  Under the Fourth Amendment, searches and seizures "inside a home without a warrant are presumptively unreasonable."  *Payton v. New York*, 445 U.S. 573, 586 (1980).  An object in "plain view" may be subject to warrantless seizure if (1) the law enforcement officer "did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed," (2) the officer has "a lawful right of access to the object itself," and (3) the object's

4

"incriminating character [is] immediately apparent." *Horton v. California*, 496 U.S. 128, 136-3 (1990) (internal quotation omitted). Where officers lawfully enter a house, which may be through valid consent, and "they come across some item in plain view and seize it, no invasion of personal privacy has occurred." *Soldal v. Cook Cnty.*, 506 U.S. 56, 65-66 (1992). In the context of a consensual search, "[t]he government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." *United States v. Yeary*, 740 F.3d 569, 582 (11th Cir. 2014).

First, we conclude that the agents and officers lawfully arrived at the place where the computer could be observed. Agent White's investigation led him to a precise IP address that guided him to Ms. Oates's Columbus, Georgia address. His authority to conduct the "knock and talk" to further the investigation is beyond dispute. *See United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006) ("[O]fficers are allowed to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just as any private citizen may." (internal quotation marks omitted)). The parties disagree about whether Mr. Oates consented to law enforcement's entry into the house following the "knock and talk," but Agent White testified that when he knocked on the door and Mr. Oates answered, he said he wanted to speak with Ms. Oates and Mr. Oates allowed him

5

to enter the house.  In denying the motion to suppress, the district court credited Agent White's testimony regarding consent.  We must defer to the district court's credibility determination unless the testimony is "unbelievable," which it is not. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (deferring to the magistrate judge's determinations crediting the officers' testimony that the defendant answered the door and voluntarily consented to a search over the defendants' conflicting testimony).  Construing the facts to which Agent White testified in the light most favorable to the government, as we must, we conclude that the district court did not reversibly err in finding that Mr. Oates consented to law enforcements' entry into the apartment.  *See Smith*, 741 F.3d at 1218.  Because Mr. Oates consented to law enforcements' entry, the agents and officers did not violate the Fourth Amendment in arriving inside the house.  *See Soldal*, 506 U.S. at 65-66.

Second, once the agents and officers entered the apartment, the computer was in plain view.  Upon entering, Agent White looked to the left of the door and saw a computer screen displaying an Ares peer-to-peer downloading file.  Moreover, given Agent White's prior investigation and resulting evidence that a computer at that address was downloading child pornography from an IP address

6

belonging to Ms. Oates at the apartment's location,[3] the computer's incriminating character was "immediately apparent." *See Horton*, 496 U.S. at 136.   Because while standing in the apartment to which he had lawful access Agent White easily recognized the Ares program that previously had been used to download child pornography at the same IP address, under *Horton* he was permitted to seize the computer. *Id.*; *United States v. Willis*, 759 F.2d 1486, 1498 (11th Cir. 1985) (permitting seizure of cap encountered in plain view after officer obtained voluntary consent to enter motel room).

Even if we were unconvinced that law enforcement lawfully seized the computer under the plain view doctrine, exigent circumstances existed to seize it. Mr. Oates argues that the district court erred in holding that exigent circumstances supported an exception to the Fourth Amendment's search warrant requirement, and that to the extent any exigent circumstances existed, they were impermissibly created by the agents.  Under the Fourth Amendment, law enforcement authorities with "probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant . . . [may] seiz[e] the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Place*, 462 U.S. 696, 701 (1983).

---

[3] Agent White obtained this information from a subpoena directed to Knology, the internet service provider.

Although the "presence of contraband without more does not give rise to exigent circumstances," exigent circumstances may arise "when there is danger that the evidence will be destroyed or removed." *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (*en banc*) (internal quotation marks omitted). "The appropriate inquiry is whether the facts would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." *Id.*

Mr. Oates contends that Agent White and his supporting officers created any exigent circumstances by entering the house without a warrant, thereby creating a possibility that he or Ms. Oates would have reason and opportunity to destroy any evidence stored on the computer. But law enforcement did not "create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment" because, as discussed above, Agent White's testimony supports a finding that he and the other officers were not acting or threatening to act in violation of Mr. Oates's rights. *Kentucky v. King*, 563 U.S. ___, 131 S. Ct. 1849, 1858 (2011). Moreover, we do not, in circumstances such as these, "fault[] the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause." *Id.* at 1861. It was reasonable for the agents and officers to perform a "knock and talk," rather than immediately seek a warrant, given their skepticism regarding whether a 60 year old woman would be

8

downloading child pornography.  *See United States v. Williams*, 731 F.3d 1222, 1231 (11th Cir. 2013) (describing initial encounter as a "knock and talk" done for legitimate investigative purposes after learning of criminal activity occurring at the house).  And, as we discussed above, we will not disturb the district court's finding that the agents and officers' entry into the apartment was based on consent.  Thus, we disagree with Mr. Oates that Agent White and his team created any exigent circumstances.  *King*, 131 S. Ct. at 1858.

Instead, we conclude that the district court did not err in finding that exigent circumstances justified an exception to the warrant requirement because there was a danger that the evidence on the computer could have been destroyed or removed. *See Tobin*, 923 F.3d at 1510.  Agent White testified that Mr. Oates admitted to downloading child pornography on the computer at issue once they stepped outside, which gave the agents probable cause.  Agent White also testified that the computer had to be unplugged because if the computer were shut down, the data on the computer could be compromised.  So, he testified, even if Ms. Oates and her daughter did not know the reason behind Mr. Oates's questioning, the officers still ran the risk that the evidence would be destroyed before they could obtain a warrant because someone might simply shut down the computer.  *See United States v. Bradley*, 644 F.3d 1213, 1262 (11th Cir. 2011) (accepting the district court's finding that exigent circumstances existed where agents shut down a

9

company's servers due to "fear that data might be lost" because employees had the "ability and incentive to, after learning of the rain, destroy damning information contained on the computer servers"). In any event, Agent White testified, it was possible that Ms. Oates or her daughter would tamper with the computer before he could secure a warrant. The district court credited this testimony in concluding that the risk of tampering constituted exigent circumstances justifying the seizure of the computer without a warrant. We accept this credibility determination and conclude that the facts to which Agent White testified could lead a "reasonable, experienced agent to believe" that evidence of child pornography might be destroyed before they obtained a warrant. *See Tobin*, 923 F.3d at 1510. The district court therefore did not err in deciding there were exigent circumstances that would permit a warrantless seizure of the computer.

For the foregoing reasons, we affirm Mr. Oates's conviction.

**AFFIRMED.**